**Inez WRIGHT et al., Plaintiffs,**

v.

**G. William MILLER et al., Defendants.**

**Civ. A. No. 76–1426.**

United States District Court,
District of Columbia.

Nov. 26, 1979.

Robert H. Kapp, Sara-Ann Determan, Norman J. Chachkin, Hogan & Hartson, Robert A. Murphy, Richard S. Kohn, Lawyers' Committee for Civil Rights Under Law, Washington, D. C., for plaintiffs.

Donald J. Gavin, Phillip D. Bostwick, Tax Division, Dept. of Justice, Washington, D. C., for defendants.

J. Thomas Lenhart, Washington, D. C., Michael J. Kearns, Shaw, Pittman, Potts & Trowbridge, Washington, D. C., George E. Morrow, Memphis, Tenn., for intervenor Allen.

## OPINION

HART, District Judge.

This is an action brought by parents of 25 black school children who attend public school in seven states, representing a nationwide class of "several million individuals." Oral Argument, November 20, 1979. Plaintiffs maintain that Internal Revenue Service Regulations, promulgated pursuant to § 501(a) of the Internal Revenue Code, afford unlawful support to discrimination by granting tax exemptions to discriminatory private schools and tax deductions for gifts to such schools. Plaintiffs claim that by recognizing the schools as exempt from federal taxation, the defendants have facilitated the development and operation and the provision of racially segregated educational opportunities for white children avoiding attendance in desegregating public schools. Complaint, ¶ 48. Plaintiffs further allege that the regulations permit schools to receive tax exemptions merely on the basis of adopting and certifying—but not implementing—a policy of nondiscrimination, in violation of Title VII of the Civil Rights Act of 1964 (42 U.S.Code § 2000e), the Civil Rights Act of 1866 (42 U.S.Code § 1981), and the Fifth and Fourteenth Amendments to the United States Constitution.

Plaintiffs seek declaratory and injunctive relief requiring defendants to deny all applications for tax exempt status for, and to revoke all tax exemptions now held by, all private schools, or the organizations that operate them, which have insubstantial or nonexistent minority enrollments, which are located in or serve desegregating public school districts, and which:

(a) were established or expanded at or about the time the public school districts in which they are located or which they serve began desegregating; *or*

(b) have been determined in adversary judicial or administrative proceedings to be racially segregated; *or*

(c) cannot demonstrate that they do not provide racially segregated educational opportunities for white children avoiding attendance in desegregating public school systems. Complaint, ¶ 4.

On August 22, 1978, the Internal Revenue Service published in the Federal Register a proposed modification of current procedures

(43 Fed.Reg. 37296). In response to public outcry against the proposed modifications, the Internal Revenue Service (hereinafter, "IRS") modified its original proposal and submitted it for public comment on February 9, 1979. · On September 29, 1979, the 1980 General Appropriations Act became law. Included in this legislation were amendments (hereinafter, "Ashbrook and Dornan Amendments") expressly forbidding the use of any funds for the "formulation or carrying out" of the February 9, 1979 IRS proposed guidelines. This action effectively retains, at least for one year, Revenue Procedure 75–50. This is the regulation attacked by plaintiffs as "inadequate to insure compliance with the Internal Revenue Code" and therefore "legally insufficient." Complaint, ¶ 2.

For the following reasons, defendant's Motion to Dismiss is granted and the "*Wright* component"[1] of the case is dismissed in its entirety with prejudice: (A) the *Wright* plaintiffs lack standing to assert their claims; (B) the action of the *Wright* plaintiffs is barred by the doctrine of nonreviewability; (C) recent Congressional action suggests that this Court should not fashion a remedy for the *Wright* plaintiffs. This Court concludes that each reason is, in and of itself, a sufficient justification for dismissal of plaintiffs' action. Therefore, this Court finds it unnecessary to consider the issues of (1) state action; (2) sovereign immunity; (3) the applicability of Title VII of the 1964 Civil Rights Act; and (4) the applicability of the "indispensable party" Rule 19 of the Federal Rules of Civil Procedure.

1. This dismissal does not affect the status of the "*Green* component" of the case (formerly C.A. 69–1355, consolidated with *Wright* on August 5, 1977). Though the cases are technically consolidated, the "jurisdictional" arguments which justify dismissal in *Wright* are irrelevant to the remaining issue in *Green*. This is true for two reasons. First, Judge Waddy explicitly denied the *Green* Motion to Dismiss on May 25, 1977 (before the cases were consolidated) rejecting, among other issues, the "jurisdictional" arguments. Second, on June 30, 1971, a three judge court enjoined the IRS from granting final exemption rulings to Mississippi schools until it supplemented the steps it had previous-

A.

## THE WRIGHT PLAINTIFFS LACK STANDING TO ASSERT THEIR CLAIMS

▌ Though the recent case law of standing is so dynamic and expansive as to almost defy codification, it appears to the Court that a claimant must *independently* satisfy each of four criteria in order to maintain standing to assert its claim. First, the claimant must assert a distinct, palpable, and concrete injury. Second, this injury must be fairly traceable to defendant's actions. Third, there must be a sufficient degree of certainty that the relief requested will remove the injury. Fourth, there must exist a sufficient degree of concrete adverseness between the plaintiff and defendant. In the instant case, the parents of the 25 black public school children must satisfy each criteria to maintain this action. It is the conclusion of this Court that they satisfy none of the criteria.

1. *Plaintiffs fail to assert a distinct, palpable, and concrete injury.*

▌ In *Schlesinger v. Reservists to Stop the War,* 418 U.S. 208, ·94 S.Ct. 2925, 41 L.Ed.2d 706 (1974), the Supreme Court noted that, "Concrete injury, whether actual or threatened, is [that] indispensable element of a dispute which serves in part to cast it in a form traditionally capable of judicial resolution . . ." It is not sufficient that the plaintiff desires "sweeping relief" or that the parties have sharply conflicting views and interests. There must be a distinct, palpable, and concrete injury.

ly taken. *Green v. Connally,* 330 F.Supp. 1150 (D.D.C.1971). In issuing the injunction, the Court affirmed the standing of the *Green* plaintiffs to assert their claims, noting that: " . . . They have standing to attack the constitutionality of statutory provisions which they claim provide an unconstitutional system of benefits and matching grants that fosters and supports a system of segregated private schools . . ." On March 9, 1979 it was ordered that the remaining issue in *Green* be limited to whether or not defendants have complied with the injunction issued in 1971 by the three judge court.

Plaintiffs maintain that the IRS Regulations, as currently structured and administered, present two related injuries. First, the granting of tax exemptions to segregated schools invades plaintiffs' Constitutional right to be free of government aid to and involvement with racial discrimination. Plaintiffs argue that *Norwood v. Harrison,* 413 U.S. 455, 93 S.Ct. 2804, 37 L.Ed.2d 723 (1973), *Griffin v. State Board of Education,* 296 F.Supp. 1178 (E.D.Va.1969), *Gilmore v. City of Montgomery,* 473 F.2d 832 (5th Cir. 1973), reversed in part on other grounds, 417 U.S. 556, 94 S.Ct. 2416, 41 L.Ed.2d 304 (1974), and *Green v. Connally, supra,* support the proposition that Title VII of the Civil Rights Act of 1964 establishes a "right to be free from government aid to segregation." Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss at 22. Second, plaintiffs allege that the IRS Regulations cause injury by subverting plaintiffs' right to Constitutionally mandated public school desegregation by enhancing the degree to which discriminatory private schools can provide a haven for white children avoiding desegregating public schools.

■ While each of these harms is theoretically plausible, there is no allegation in the record before the Court that the "target schools"[2] are actually discriminating in violation of the Constitution or federal law. If such an allegation were proven, this Court would have no difficulty ordering an end to the discrimination by the offending school, for the Supreme Court has forcefully held that no private school has any right at law to exclude, or otherwise discriminate against, Negroes on the ground of race. *Runyon v. McCrary,* 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976). Thus, plaintiffs are in a dilemma in their attempt to satisfy the distinct, palpable, and concrete injury criteria for standing. If plaintiffs can prove that a private school is discriminating in direct contravention of the Constitution and federal law, such discrimination is redressable through an ordinary lawsuit in an adversary context filed directly against the offending school. If, on the other hand, plaintiffs cannot prove such discrimination, they have failed to assert a distinct, palpable, and concrete injury and thus lack the requisite standing to assert their claims.

2. *Even if plaintiffs assert a distinct, palpable, and concrete injury, the injury is not fairly traceable to the actions of the defendants.*

If the plaintiff parents of 25 black public school children are injured, the injury is caused by the offending "target" private schools who are *not* parties to this action. There is no sufficient causal nexus between the plaintiffs' injury and the *named* defendants' regulations.

2. The complaint names only the Secretary of the Treasury and the Commissioner of Internal Revenue as defendants. However, the complaint cites a number of schools as "examples" of unconstitutional IRS regulation and enforcement policy. "Private schools which are the subject of this complaint are those schools which have insubstantial or nonexistent minority enrollments and which are located in or serve desegregating public school districts." Complaint, ¶ 23. The complaint names a number of these "target schools": Harding Academy, Southern Baptist Schools of Whitehaven, and Briarcrest Baptist School System, Memphis, Tennessee; Montgomery Academy and St. James Parish School, Montgomery, Alabama; Prince Edward Academy, Prince Edward County, Virginia; Camelot Parochial School, Cairo, Illinois; Sea Pines Academy, Beaufort County, South Carolina; Bowman Academy and Holly Hill Academy, Orangeburg, South Carolina; River Oaks School, Monroe, Louisiana; Tallulah Academy and Delta Christian Academy, Madison Parish, Louisiana; Natchitoches Academy, Natchitoches Parish, Louisiana; Hyde Park Academy, South Boston Heights Academy, and Parkway Academy, Boston, Massachusetts.

The complaint is also designed to include "thousands of other racially segregated independent private schools which operate in or serve desegregated public school districts and which have received, applied for, or will apply for, federal tax exemption." Complaint, ¶ 19. Furthermore, plaintiffs argue that "it has been estimated that there are more than 3500 racially segregated private academies operating in the country having a total enrollment of more than 750,000 children." Plaintiffs' Motion for Class Certification at 2.

In *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976), certain indigents sued the Commissioner of Internal Revenue in a format closely parallel to the instant case. They asserted the illegality of a Revenue Ruling allowing tax exemptions to hospitals which offered only minimum services free to indigents. The Supreme Court dismissed for lack of standing, emphasizing that where the injury alleged by plaintiffs resulted only indirectly from the challenged action of defendant IRS, this indirectness "'may make it substantially more difficult to meet the minimum [case and controversy] requirement[s] of Article III.'" *Id.,* at 45, 96 S.Ct. 1917, 1927. In *Eastern Kentucky, supra,* the Supreme Court made the "nexus test" extremely difficult for those whose tax liability is not directly affected. Justice Stewart, concurring in *Eastern Kentucky, supra,* commented that, "I cannot now imagine a case, at least outside [of] the First Amendment area, where a person whose own tax liability was not affected ever could have standing to litigate the federal tax liability of someone else." 426 U.S., at 46, 96 S.Ct., at 1928. This Court finds that this is not such a case.

█ Two cases in this Circuit have employed similar analysis to deny standing where only an indirect connection is established. In *American Society of Travel Agents v. Blumenthal,* 184 U.S.App.D.C. 253, 566 F.2d 145 (D.C.Cir. 1977), the Court denied standing to an association of travel agents to protest the failure of federal tax authorities to assess taxes on income of the American Jewish Congress derived from the operation of travel programs. In *Tax Analysts v. Blumenthal,* 184 U.S.App.D.C. 238, 566 F.2d 130 (D.C.Cir. 1977), the Court held that a small oil well operator had no standing to sue the Secretary of the Treasury for a declaratory judgment that certain tax credits granted to American oil companies for payments to foreign nations were contrary to the Internal Revenue Code. The plaintiffs argue that both cases involve a different *type* of injury than that incurred by the parents of the 25 black public school children. However, these cases stand for the proposition that, *regardless of the nature of the particular injury,* a third party is too indirectly affected to litigate the tax liability of another party. In such a case, and as is the case here, the injury is not fairly traceable to the actions of the defendants.

3. *Even if the plaintiffs satisfied criteria 1 and 2, plaintiffs lack standing because there is a sufficient degree of speculativeness that the relief requested will remedy the injury.*

Presently, the IRS Regulations are based on an underlying policy that tax exemptions may not be granted to discriminatory private schools. Significant steps have been taken to implement this policy. In accordance with the 1971 Order in *Green v. Connally, supra,* the IRS promulgated Rev. Proc. 72–54 which required, in summary, that private schools adopt and administer in good faith a policy of nondiscrimination and publicize this policy to all racial segments of the community which they served. Defendants in 1975 proposed more detailed and stringent guidelines and, after receiving comments from approximately 100 educational institutions and other interested parties, published the guidelines in final form as Rev.Proc. 75–50. This document sets forth the current administrative enforcement standards which defendants require all private schools to meet in order to demonstrate that they have nondiscriminatory policies and that they implement these policies in good faith. Each school is required to respond under penalty of perjury.[3]

---

3. In summary, the Rev.Proc. requires exempt private schools to meet the following requirements:

 (1) The schools must formally state their nondiscriminatory policy in their organizational charter or similar instrument (Rev.Proc. 75–50, Sec. 4.01).

 (2) The schools must set forth that policy in all brochures, advertisements, catalogues, fund solicitations and similar publications (Sec. 4.03);

On the surface, plaintiffs' proposed guidelines appear to be significantly different than the current IRS procedure in that they shift the burden of proof onto the private schools to establish their innocence *after* their exemptions have been withdrawn by the IRS. The plaintiffs' proposed guidelines require all "badge of doubt" schools (to be determined by plaintiffs' three criteria, see p. 2, *supra*) to overcome a presumption of guilt. However, the record provides absolutely no indication that the criteria that the IRS would employ under plaintiffs' proposed remedy would be any different than those which are employed currently. Hence, it is purely speculative whether, in the final analysis, any fewer schools would be granted tax exemptions under plaintiffs' system than under the current IRS system.

Furthermore, even if it were reasonable to assume that fewer exemptions would be available to "target" private schools under plaintiffs proposed guidelines, it is purely speculative that loss of these exemptions would produce any net change in the desegregation of a given school district (the second injury asserted by plaintiffs). It is by no means clear that these schools would not elect to forego the exemption in question rather than end any discriminatory conduct. It appears probable that many such schools have only limited dependence on these exemptions; indeed, even assuming substantial dependence, the schools might well choose to compensate by alternate means for financial benefits otherwise available from the exemptions. Clearly,

under law firmly established by *Eastern Kentucky, supra*, plaintiffs lack standing because there is a sufficient degree of speculativeness that the relief requested will remedy the injury claimed by plaintiffs.

4. *Even if plaintiffs satisfied criteria 1, 2, and 3, plaintiffs lack the necessary concrete adverseness to satisfy the case and controversy requirement of Article III.*

Under plaintiffs' proposed guidelines, all "target" schools would presumptively lose their tax exempt status until such time as they could prove to the IRS that they are not discriminating. If plaintiffs were to prevail, as of the day of the decree each of the 3500 "target" schools would lose legal rights to their exemption and deductibility status. Notwithstanding the ability of the schools to subsequently prove that they are within the law, they are not made parties to *this particular action*. Plaintiffs would deprive these schools of their valuable tax exempt status without ever giving the affected schools a day in court.

The defendant IRS, on the other hand, seems to have nothing to lose if it were forced to grant less tax exemptions to private schools. In fact, this Court observes that the named adversary parties in this action, the parents of the black public school children and the Internal Revenue Service, seem closely allied in terms of the need to promulgate future guidelines.

In *Baker v. Carr*, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1961), the Supreme Court held that both parties must have

(3) The schools must either effectively publish that policy under specified, detailed guidelines in newspapers (Sec. 4.03–1(a)), or broadcast media (Sec. 4.03–1(b)); or, in the alternative, they must be able to demonstrate that they in fact have a significant minority enrollment or have meaningfully sought to recruit such an enrollment (Sec. 4.03–2);

(4) The schools must have a nondiscriminatory policy with respect to faculty, school programs, and tuition and scholarship practices (Secs. 4.04, 4.05);

(5) They must certify all of the above under penalty of perjury (Sec. 4.06);

(6) The schools must provide specified information to defendants regarding the racial

composition of their faculty and staff, the nondiscriminatory character of their tuition and scholarship policies, and the policies regarding race discrimination held by their incorporators, founders, board, and donors (Secs. 5.01–1 through 5.01–4; see also Secs. 4.07, 4.08); and

(7) The schools must keep records for three year periods from the year of compilation regarding racial composition of faculty and students, nondiscrimination in scholarship and tuition, and as well as retaining copies of all brochures, catalogues, and the like (Sec. 7).

"such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends . . ." 369 U.S., at 204, 82 S.Ct., at 703. Thus, the standing question in its Article III aspect "is whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Warth v. Seldin*, 422 U.S. 490, 498–499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975) (emphasis in original).

Given the present posture of the case, the complaint does not present a question in the adversary context, or in a form historically viewed as capable of judicial resolution. *Flast v. Cohen*, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968).

## B.

### THE ACTION OF THE WRIGHT PLAINTIFFS IS BARRED BY THE DOCTRINE OF NONREVIEWABILITY

■ Since an accurate assessment of plaintiffs' action would require this Court to undertake detailed or continuing review of a generalized IRS enforcement program, or to review complex issues of tax enforcement policy and of agency resource allocation, this Court holds that this instant suit is barred by the doctrine of nonreviewability.

Ever since the IRS issued regulations in response to *Green v. Connally, supra,* (40 Fed.Reg. 53409), the issue of their proper implementation and enforcement has been "a terribly complex and difficult problem." Oral Argument, November 20, 1979. There have been lengthy administrative hearings and "over 100,000 written comments" (Oral Argument, November 20, 1979) concerning the two subsequent sets of modified regulations.[4] The September 29, 1979 passage of the Ashbrook and Dornan Amendments to the 1980 General Appropriations Act has had the effect of retaining the present Rev. Proc. 75–50 for at least one more year. Currently, therefore, the IRS regulatory scenario is in a significant state of flux. Since the parties admit that the present guidelines are in some way inadequate, the dispute seems to involve a choice among a number of proposed guidelines. Presented with this factual situation, this Court concludes that it would be inappropriate for it to fashion relief in this case. Such action would be tantamount to this Court becoming a "shadow commissioner of Internal Revenue" to run the administration of tax assessments to private schools in the United States. It is clearly inappropriate and unjustifiable for a federal court to become the administrator of a nationwide tax enforcement program.

Plaintiff proposes that this Court require the IRS to implement three guidelines which the IRS would therefore be bound to administer and enforce. In order to assess the viability of IRS implementation and enforcement efforts, this Court would be required to analyze results from a significant number of schools. Even if, as plaintiffs contend, the Court need examine only a "representative number" of schools to gauge compliance, the effort would be unfathomable. The thrust of the complaint is that there are "thousands of . . . racially segregated independent private schools which operate in or serve desegregating public school districts." Complaint, ¶ 20. Plaintiff further contends that there are more than 3,500 racially segregated private academies operating in the country having a total enrollment of more than 750,000 children. Complaint ¶ 20. It is clear that such review would impose grave burdens on this Court's resources and would require the Court to exercise an extensive administrative expertise and to involve itself deeply in defendants' practical day-to-day operations.

---

4. See p. 8, *supra,* for a more thorough discussion of the considerable IRS regulatory and enforcement activities.

■ Application of this doctrine of non-reviewability entails an analysis of the pragmatic consequences for the court itself and for the affected agency likely to result from the review being sought. *Panama Canal Co. v. Grace Line,* 356 U.S. 309, 78 S.Ct. 752, 2 L.Ed.2d 788 (1958). (Holding nonreviewable certain complex technical issues regarding the application of the statutory formula for fixing canal tolls to particular facts and cost accounting methods). Applying this standard to a factual situation similar to this case, the District Court for this district ruled that it would not review the IRS assessment of taxes on income of the American Jewish Congress derived from the operation of travel programs. *American Society of Travel Agents v. Blumenthal,* 75–1 U.S.T.C. 87,289 ¶ 9484 (D.C.D.C.1975). By memorandum order, the Court observed that, "Plaintiffs are in effect asking the Court to substitute its discretion for that of the Internal Revenue Service in determining which travel programs of tax exempt organizations qualify for tax exemptions . . . This is the kind of review which courts traditionally decline to undertake. The court's jurisdiction may be invoked to check a specific abuse of discretion by the Internal Revenue Service . . . But it may not be invoked to undertake continuing supervision of the IRS's administration of the Internal Revenue Code." *Id.,* at 87,290.

Plaintiffs cite a line of cases supporting the proposition that courts are required to review agency action when the harm involved is a "fundamental, Constitutional" one. *Johnson v. Robison,* 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1973); *Adams v. Richardson,* 156 U.S.App.D.C. 267, 480 F.2d 1159 (D.C.Cir. 1973). In the instant case, however, the issue is not *whether* review is possible. Rather, the core issue concerns the *type* of review that is appropriate, feasible, and consistent with the doctrine of nonreviewability. This Court submits that any violation of the Constitution or federal law by a discriminating school should be remedied on a case-by-case basis through a lawsuit filed directly against the offending school.

## C.

## RECENT CONGRESSIONAL ACTION SUGGESTS THAT THIS COURT SHOULD NOT FASHION A REMEDY FOR THE WRIGHT PLAINTIFFS

■ On September 29, 1979, the General Appropriations Act of 1980 (P.L. 96–74) became law. Section 615 of the Act, known as the Dornan rider, provides as follows: "None of the funds available under this Act may be used to carry out proposed revenue procedure 4830–01–M of the Internal Revenue Service entitled 'Proposed Revenue Procedure on Private Tax-Exempt Schools' (44 F.R. 9451 through 9455, February 13, 1979, F.R. Document 79–4801), and proposed revenue procedure 4830–1 of the Internal Revenue Service entitled 'Proposed Revenue Procedure on Private Tax-Exempt Schools' (43 F.R. 37296 through 37298, August 22, 1978, F.R. Document 78–23515), or parts thereof." Section 103 of the Act, known as the Ashbrook rider, is much broader, and provides as follows: "None of the funds made available pursuant to the provisions of this Act shall be used to formulate or carry out any rule, policy, procedure, guideline, regulation, standard, or measure which would cause the loss of tax-exempt status to private religious, or church-operated schools under section 501(c)(3) of the Internal Revenue Code of 1954 unless in effect prior to August 22, 1978." The effect of this recent action is to retain in effect, at least until September, 1980, the presently effective Rev.Proc. 75–50, which is the regulation attacked by plaintiffs as inadequate to insure compliance with the Internal Revenue Code and therefore "legally insufficient." Complaint, ¶ 23.

This Court agrees that the Ashbrook and Dornan Amendments provide "a complete and total refutation of the contention . . that existing regulations are legally insufficient, and that Section 501(c)(3) of the Internal Revenue Code requires adoption of the presumed-guilty-until-proven-innocent approach which requires of private schools

"proofs" of non-discrimination . . . ." Second Supplemental Memorandum of Intervenor Wayne Allen in Support of Motion to Dismiss at 4. Congress has absolutely forbidden the IRS from adopting *any* new regulations concerning the tax-exempt status of private schools. If plaintiffs were to be granted the relief they seek in this case, it would be completely contrary to Congressional intent and policy. The actions by Congress are the strongest possible expressions of the Congressional intent that Section 501(c)(3) of the Internal Revenue Code is not susceptible of the construction which plaintiffs would place upon it in this case.

As plaintiffs contend, the legislative history of the Ashbrook and Dornan Amendments apparently *allows* a federal court to fashion a remedy in this area. However, this Court maintains that, in such an area ripe with legislative history and governmental regulation,[5] it is not the business of a federal court to explicitly thwart the will of Congress or to otherwise fail to carry it out. This Court declines to fashion such a remedy.

In conclusion, this Court is of the opinion that (A) the *Wright* plaintiffs lack standing to assert their claims; (B) the action of the *Wright* plaintiffs is barred by the doctrine of nonreviewability; and (C) recent Congressional action suggests that this Court should not fashion a remedy for the *Wright* plaintiffs. Accordingly, the plaintiffs involved in the "*Wright* component" of the litigation are dismissed and judgment will be entered in favor of the defendants.

---

5. See p. 8, *supra*, for a discussion of appropriate regulatory history.