**SHERMAN COLLEGE OF STRAIGHT CHIROPRACTIC et al., Plaintiffs,**

v.

**UNITED STATES COMMISSIONER OF EDUCATION et al., Defendants,**

**The Council on Chiropractic Education, Inc., Defendant-Intervenor.**

Civ. A. No. 79–2224.

United States District Court, District of Columbia.

July 15, 1980.

Andrew P. Miller, Leslie J. Ruben, James van R. Springer, Washington, D. C., for plaintiffs.

Lewis M. Popper, Washington, D. C., for defendant-intervenor.

John C. Martin, Asst. U. S. Atty., Washington, D. C., for defendants.

## ORDER

HART, District Judge.

This is an action for judicial review of a final agency action by the Commissioner of Education (hereinafter, "Commissioner") on June 27, 1979, recognizing the Council on Chiropractic Education (hereinafter "CCE") as a national accrediting body for chiropractic colleges. This cause has come on for hearing before this Court upon cross motions for summary judgment.[1]

The defendant Commissioner of Education is required under the Higher Education Act to "publish a list of nationally recognized accrediting agencies or associations which he determines to be reliable authority as to the quality of training offered" in each educational field. 20 U.S.C. §§ 1085(b) and 1141(a). The first list of recognized accrediting agencies was published on October 4, 1952. 17 Fed.Reg. 8929. Together with the list of agencies, the Commissioner published a set of Criteria according to which the determination to put an accrediting agency on the list had been made. The Criteria were revised and reissued on January 16, 1969 (34 Fed.Reg. 643), and again revised and reissued on August 20, 1974 (39 Fed.Reg. 30042). Under these Criteria, the accrediting agency sets its own standards for accreditation of institutions of higher education.[2] The Commissioner in no way imposes standards on an accrediting agency nor intends that recognition of an agency means that its standards for accreditation are the only ones which may prevail. Since the standards are set by those institutions and entities that have membership in the accrediting agency, any institutions which cannot agree to the standards of a listed agency may establish their own peer review agency and file their own petition for recognition. The Commissioner's determination runs only to the fact that the listed accrediting agency is a reliable authority. It does not constitute a determination that the listed accrediting agency is the only reliable accrediting agency. Other accrediting agencies in the field that can prove they meet a "need" may petition for recognition and listing. Ross Affidavit, p. 10. *See generally*, Deposition of Former Commissioner of Education Dr. Ernest L. Boyer.

The Council on Chiropractic Education, defendant-intervenor in this action, is an autonomous entity. Formed in 1947, CCE is sponsored and funded by the major national chiropractic organizations and is broadly representative of the chiropractic profession. All but two of the seventeen institutions of chiropractic education in the United States are dues-paying members of CCE and support CCE's standards and policies. Plaintiffs Sherman College and Adio Institute are the only two that do not. CCE's nine-member Commission on Accreditation, which evaluates chiropractic educational institutions for accreditation, is composed of two appointees from CCE member colleges; two appointees from the Federation of Chiropractic Licensing Boards; three appointees from the sponsoring national associations[3]; and two public representatives. The sponsoring national organizations between them account for approximately 14,000 of the estimated 18,000 doctors of chiropractic in the United States, varying from broad to limited scopes of

---

1. Defendant Commissioner originally filed a Motion to Dismiss, Or, in the Alternative for Summary Judgment on January 8, 1980. On May 1, 1980, defendant converted the motion to one for summary judgment on all issues. On April 4, 1980, plaintiff filed its summary judgment motion.

2. *See*, in particular, 1952 Criteria, Nos. 5 and 8; 1969 Criteria 4 and 11, 1974 Criteria, 45 C.F.R. § 149.6(b)(2)(ii)(A); (c)(1).

3. The American Chiropractic Association (claiming 11,000 members) and the International Chiropractors Association (claiming 3,000 members).

practice. Miller affidavit, ¶¶ 5, 6. CCE first applied to the Commissioner for recognition as a reliable authority as to the quality of training offered by chiropractic educational institutions in 1973. Ross affidavit, p. 13. An organization called the Association of Chiropractic Colleges (hereinafter, "ACC") also applied for recognition. ACC was an association representative of several institutions adhering to the "straight doctrine." Both applications were denied by the Commissioner. Ross affidavit, p. 13. In 1974, CCE reapplied for recognition and after review of its application, it was recognized. ACC, however, never reapplied for recognition. Ross affidavit, p. 14.

Plaintiffs are two institutions representing a divergent chiropractic philosophy. Plaintiff Sherman College of Straight Chiropractic (hereinafter, "Sherman") is an institution of higher learning offering the degree of Doctor of Chiropractic and its graduates are licensed as Doctors of Chiropractic by a number of states. Plaintiff ADIO Institute of Straight Chiropractic (hereinafter, "Adio") is an institution of higher education which began operations in January, 1978. In 1975, Sherman applied to CCE for accreditation but was denied. CCE denied the application on several grounds, including (a) insufficient evidence that Sherman could operate a teaching clinic in which students could gain practical experience with patients; (b) lack of assurance that control of Sherman was vested in a board; and (c) unsound planning in several important areas, such as curriculum and laboratory training for development of diagnostic skills; securing authority for human dissection; and providing a commitment to preparing portal-of-entry health care providers. CCE encouraged Sherman to correct the deficiencies and reapply. Instead, Sherman appealed. An independent, three-person panel unanimously sustained the denial of Sherman's application. Sherman withdrew its application in October, 1976, and has never reapplied. Miller affidavit, ¶¶ 9, 10, 12. In August, 1978, CCE submitted its petition for renewal of recognition. Having already been denied accreditation by CCE, plaintiffs attempted to block the renewal of CCE's recognition. However, the Commissioner granted CCE a full three year renewal.

The controversy that instigated this litigation concerns a dichotomy of approach to diagnosis rather than treatment. Sherman and Adio provide no clinical training in diagnosis other than for spinal conditions, and teach their students that chiropractors should not engage in diagnosis. CCE believes that diagnosis of systemic diseases, not simply spinal disorders, is an essential part of proper chiropractic practice. Sullivan affidavit, ¶ 4.

This Court has considered the legal memoranda and arguments of counsel and the affidavits, depositions, and statements of material facts submitted therewith. It appears to this Court that no genuine issue exists as to any material fact. It also appears to this Court as follows:

■ I. *PLAINTIFFS HAVE STANDING TO ASSERT THEIR CLAIMS.* It appears that plaintiffs have satisfied each of the four criteria that this Court has previously set out. *Wright v. Miller,* 480 F.Supp. 790 (1979).

a. *Plaintiffs suffer a distinct, palpable, and concrete injury.* First, plaintiffs' reputations are damaged by federal recognition of an agency which precludes them from federal accreditation. Inability to obtain such accreditation carries with it the stigma of being an institution which does not satisfy federally approved standards for quality chiropractic education. *Southern Mutual Help Assoc., Inc. v. Califano,* 187 U.S.App. D.C. 307, 574 F.2d 518 (1977). Second, plaintiffs suffer distinct and significant injury. Because the agency recognized by the Commissioner will not approve plaintiffs as providing their students with quality chiropractic training, students have chosen to attend accredited schools which are in competition with plaintiffs. Because graduates and prospective graduates of plaintiffs cannot be licensed in many states unless CCE accredits them, plaintiffs have lost additional students to competitors which have been accredited by CCE. *Data*

*Processing v. Camp,* 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). Third, plaintiffs suffer noncompetitive economic injury. Plaintiffs have lost donations because of their preclusion from accreditation. Sherman has lost patients at its health clinic because they believe students attending an unaccredited school cannot provide quality chiropractic care. *Barlow v. Collins,* 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970).

b. *Plaintiffs injuries are fairly traceable to the Commissioner's action, and will be substantially remedied by the relief requested.* These two criteria are satisfied by plaintiffs. The injuries suffered because of doctrinal ineligibility for federally recognized accreditation will be substantially alleviated if plaintiffs prevail. If CCE's recognition were conditioned upon elimination of the doctrinal test, there is substantial likelihood it would change its policy so as to permit accreditation of plaintiff schools. *National Association of Neighborhood Health Centers, Inc. v. Mathews,* 179 U.S. App.D.C. 135, 551 F.2d 321 (1976). Even if CCE refused to comply with a condition forbidding doctrinal discrimination, plaintiffs would benefit substantially from withdrawal of CCE's recognition that would follow in that event. The stigma of nonaccreditation by an agency bearing the imprimatur of the Commissioner would be removed, along with the competitive disadvantages which flow therefrom. There is also a substantial likelihood that plaintiffs' ability to secure licensure for their students would be improved. The requisite degree of causation exists in this case. *Data Processing, supra.*

c. *There is a sufficient degree of adverseness between plaintiffs and defendants.* Plaintiffs do seek concrete benefits for themselves in asking for rectification of their doctrinal preclusion from CCE accreditation and all the reputational and financial benefits which flow from such accreditation. *Data Processing, supra.*

■ II. *THE COMMISSIONER'S ACTION IS JUDICIALLY REVIEWABLE BY THIS COURT.* The Commissioner's recognition action is not unreviewable agency action "committed to agency discretion by law" within the meaning of the Administrative Procedure Act. 5 U.S.C. § 701(a)(2). Judicial review will not be cut off "unless there is persuasive reason to believe" that Congress so intended, and that "only upon a showing of 'clear and convincing evidence' of a contrary legislative intent" should a court hold that agency action is not reviewable. *Abbott Laboratories v. Gardner,* 387 U.S. 136, 140, 141, 87 S.Ct. 1507, 1510, 1511, 18 L.Ed.2d 681 (1967). The exemption from judicial review of action "committed to agency discretion" is "a very narrow" exception which applies only "in those rare instances where 'statutes are drawn in such broad terms that in a given case there is no law to apply.'" *Overton Park v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). There is clearly "law to apply" here. The statutory language requires the Commissioner to determine that a recognized agency is "reliable authority." *Overton Park,* supra ("feasible and prudent" held a sufficient statutory guide for review). Even if the relevant statutes do not provide "law to apply," the regulations promulgated by the Commissioner do for they interpret the statutory mandate and limit the exercise of the Commissioner's discretion.[4]

■ III. *THE COMMISSIONER'S RENEWAL OF CCE'S RECOGNITION WAS CONSISTENT WITH THE EXPLICIT CRITERIA ESTABLISHED BY THE REGULATIONS AND WAS NOT ARBITRARY, CAPRICIOUS, AN ABUSE OF DISCRETION, OR OTHERWISE NOT IN ACCORDANCE WITH LAW.* This Court has considered both the statutes authorizing the Commissioner to recognize accrediting agencies and the regulations more specifically defining the exercise of that authori-

---

4. 45 C.F.R. § 149.1 provides that recognition will be granted "only when the accrediting agency meets the criteria established by the Commissioner"; 45 C.F.R. § 149.5(a) places the burden of showing compliance with the criteria upon the accrediting agency; and 45 C.F.R. § 149.6 sets forth the specific criteria which must be satisfied.

ty. For four reasons, this Court finds that the Commissioner acted well "within the scope of his authority." *Overton Park, supra.*

First, *the Commissioner correctly found that CCE satisfied the recognition criteria.* The record indicates that CCE's accreditation program "takes into account the rights, responsibilities, and interests of students, the general public, the academic, professional, or occupational fields involved, and institutions." 45 C.F.R. § 149.6(b)(1)(i). The Commissioner also correctly found that CCE's reliability is demonstrated by reflection "in the composition of its policy and decisionmaking bodies of the community of interests directly affected by the scope of its accreditation." 45 C.F.R. § 149.6(c)(4). Further, on-site visits, written reports, opportunity for comment, appeal procedures, and other requirements mandated by 45 C.F.R. § 149.6(b)(3) assures that CCE's "evaluations are conducted and decisions rendered under conditions that assure an impartial and objective judgment." 45 C.F.R. § 149.6(b)(8). Plaintiffs do not seriously contest compliance with any other criterion.

Second, *plaintiffs have ready alternative routes to accreditation available to them.* There is no requirement that a given school be accredited by a particular agency, nor is there any limitation on the number of accrediting bodies that can be recognized in a given field. If dissatisfied with the existing agency in its field, plaintiffs are free to create and seek recognition for an agency which "represents them and that can coexist with CCE." Oral argument, July 15, 1980. Plaintiffs themselves emphasize their distinct view of the chiropractic profession. The proper channel for their efforts is to establish their own chiropractic accrediting agency and secure federal recognition for it. There is "nothing in the tradition or regulation that would exclude [i]t." Boyer deposition, p. 10. Indeed, there are five examples of such dual recognition today. *See* 44 Fed. Reg. 4,017, 4,018–19 (1979). Plaintiffs have already begun this process. Their accrediting agency, the Straight Chiropractic Academic Standards Association, Inc. (herein-

after "SCASA") has already published its educational standards and policies, and in due course may proceed to seek recognition by the Commissioner. Miller affidavit, ¶ 17. If plaintiffs are sincere in their claim that the differences between them and CCE arise from fundamentally divergent views of the scope of chiropractic education and practice, then plainly they have a different mission and program, and their newly-formed accrediting agency may seek and obtain separate recognition.

There are other alternatives available to plaintiffs. A chiropractic college could be accredited by one of the regional accrediting agencies which accredit a wide variety of educational institutions throughout a specific geographic area instead of institutions concerned with one occupational field such as chiropractic. Miller affidavit, ¶ 18. Moreover, the recognition statutes provide alternatives under which schools may establish eligibility for federal aid without accreditation. One such means is a school's showing that its credits are accepted upon transfer by at least three accredited institutions. Sherman has, in fact, employed this method—referred to as the "three institution certification eligibility"—to obtain its funding. 20 U.S.C. § 1141(a)(5)(B).

Third, *the Commissioner has a limited statutory role in recognizing accrediting agencies.* Recognition of an agency or association clearly does not bestow monopoly jurisdiction over the field of program specialization as defined by the agency or association in its application for recognition. Boyer deposition, pp. 122–23. The accrediting agencies themselves are clearly intended to be private bodies. The government "recognizes" them, but plays no role in establishing them or defining their scope of operations. The Commissioner is strictly limited to reacting to private initiatives. Boyer deposition, pp. 78–79. Despite the manner in which an accrediting body such as CCE defines its "universe," recognition of that agency or association does not preclude the legitimate interests of those who do not believe they fall within that universe.

Fourth, *the Commissioner must not be required to arbitrate educational standards for the nation's professions.* The fundamental question underlying this action is how the Commissioner should treat an intra-professional doctrinal dispute in deciding whether to grant or renew recognition to an accrediting agency that rejects the doctrine of a deviant splinter group. In this case, plaintiffs request the Court to instruct the Commissioner, among other things, that a chiropractic accrediting agency cannot require clinical diagnostic training. Such a precedent might ultimately require the Commissioner to become "a specialist on the matter of educational philosophy" in every field and would make him a "referee in . . . intra-professional combat." Boyer deposition, pp. 36, 114. The Commissioner responds "to professional groups that have organized themselves, that seem to have enough legitimacy to engage in self-policing, and when he becomes the educational philosopher he has overstepped the bounds." Boyer deposition, pp. 50–52. Such action would "represent unwarranted intrusion by the Federal government into the private sector of academia." Oral argument, July 15, 1980. Appropriately, therefore, the statutes do not call for the Commissioner to pass upon the substantive standards of an accrediting agency, but only to determine that the agency is "reliable authority as to the quality of training offered." Surely, educational philosophies differ. However, the Commissioner acted correctly in deciding the only issue it could legitimately determine: that CCE is a "reliable authority" under the statute.

Thus, upon consideration of defendants' Motion for Summary Judgment, Plaintiffs' Motion for Summary Judgment, the oppositions thereto, oral argument, and the entire record in this case, it is by this Court this 15th day of July, 1980,

ORDERED, that defendants' Motion for Summary Judgment be, and the same hereby is, granted; and it is further

ORDERED, that plaintiffs' Motion for Summary Judgment be, and the same hereby is, denied; and it is further

ORDERED, that this action is dismissed.